ANTHONY RANCIATO AND LUCILLE RANCIATO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ranciato v. Commissioner
Docket No. 27159-91
United States Tax Court
T.C. Memo 1993-536; 1993 Tax Ct. Memo LEXIS 551; 66 T.C.M. (CCH) 1355; November 18, 1993, Filed *551 Decision will be entered under Rule 155. Ps have operated a pet store since at least 1963. Although the store was profitable in its early years, it did not earn a profit in the 1980 through 1987 taxable years. For 1985, 1986, and 1987, the taxable years in issue, Ps reported costs of goods sold and expenses in excess of the store's gross receipts. Held: Ps' pet store was not an activity entered into for profit during the years in issue. For petitioners: George H. Romania. For respondent: John Aletta. LARO
LARO
MEMORANDUM FINDINGS OF FACT AND OPINION LARO, Judge: Respondent determined deficiencies in and additions to the Federal income tax of Anthony and Lucille Ranciato (petitioners) as follows: Additions to Tax
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)
1985
$ 12,208
$ 329
$ 660
1986
5,861
--
--
1987
36,378
--
--
Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
6653(a)(1)(A)
6653(a)(1)(B)
6653(a)(2)
6661
1985
--
--
[1]
$ 3,052
1986
$ 293
[1]
--
--
1987
1,819
[1]
--
9,019
Respondent also determined that, under section 6621(c), a portion *552 of the deficiency for each year was a substantial underpayment attributable to a tax-motivated transaction so that petitioners are liable for interest after December 31, 1984, at 120 percent of the interest rate established by section 6621(b). Petitioners filed a timely petition for redetermination of respondent's determinations reflected in her notice of deficiency. After concessions, [1] *554 the issues for decision are: (1) Whether petitioner's pet store was an activity engaged in for profit within the meaning of section 183; [2] (2) whether petitioners are allowed pet store costs of goods sold in excess of $ 26,004, $ 26,964, and $ 28,798 for their 1985, 1986, and 1987 taxable years, respectively; (3) whether petitioners are liable for an addition to tax under section 6651(a)(1) for filing an untimely 1985 Federal income tax return; (4) whether petitioners are liable for additions to tax for negligence under sections 6653(a)(1) and (2) for their 1985 taxable year and under sections 6653(a)(1)(A) and (B) for their 1986 and 1987 taxable years; (5) whether petitioners are liable for additions to tax for substantial understatement of tax under section 6661 for their 1985 and 1987 taxable *553 years; and (6) whether petitioners are liable for increased interest on their tax deficiencies under section 6621(c) for their 1985, 1986, and 1987 taxable years. We hold that petitioners did not engage in the pet store activity for profit, and limit petitioners' costs of goods sold for each year to amounts substantiated. We also sustain respondent's determination with respect to all the additions to tax in issue. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations and exhibits attached thereto are incorporated herein by this reference. Petitioners are husband and wife. At the time they filed their petition, they resided in New Haven, Connecticut. During the years in issue, Anthony Ranciato (Ranciato) was an electrician and real estate agent. He also operated a pet store known as South Sea Aquarium, Pets and Pet Supplies (South Sea), which he started around 1963, and which sold fish, birds, and other animals, as well as related supplies. Ranciato worked at South Sea on evenings and weekends. However, he also held various jobs during the years in issue. In 1985, he worked part of the year as an electrician at a job site approximately 60 miles from South Sea, earning $ 32,685; later in the year, he worked 40 hours a week as an electrician at a job site 40-50 miles *555 from South Sea, earning $ 11,487. During 1985 he also worked as a real estate agent, travelling nearly every day, for a total of approximately 27,000 miles. He opened Rance Realty in late 1985 and continued to work there in 1987; this business also required travel. During 1986, Ranciato also was employed as an electrician by various companies for indefinite periods, earning wages totaling $ 10,808. Petitioners used the cash method of accounting for Federal income tax purposes. Ranciato kept the books and records for South Sea, which consisted only of receipts, cancelled checks, ledgers, and some invoices. South Sea did not keep inventory records. The records it did keep were very disorganized; Ranciato's bookkeeping method consisted of separating cash payments from those made by check and putting them in separate envelopes. South Sea paid its suppliers by cash or check, sometimes paying a single invoice with a combination of cash and a check. South Sea would not always pay the full amount due a supplier at one time, depending on how much cash was on hand and the balance in the checking account. When in arrears to suppliers, Ranciato would take out a loan or take cash from *556 personal funds to pay them, if necessary. South Sea had no compensated employees during the years in issue; Ranciato's mother worked 35-40 hours a week at the store without compensation, as she had done since the 1960s. Usually Ranciato's mother paid the store suppliers. Ranciato's mother did not testify. During the years in issue and other years, petitioners lost some animals to disease. However, Ranciato never analyzed what percent of South Sea's business was the sale of animals and what percent was the sale of pet supplies. He never ascertained his gross profit markup, and he never determined the operating expenses or costs of goods sold of South Sea. Aside from advertising in the yellow pages, Ranciato spent $ 91 on advertising South Sea in 1985 and none in 1986 or 1987. South Sea showed a profit in its early years but did not earn a profit during at least the period 1980 through 1987. Ranciato did not know in which, if any years, South Sea earned a profit and if so, how much. Ranciato did not change the method of operating South Sea between 1980 and 1987 in order to increase profitability. On Schedule C of their Federal income tax returns for each of the taxable years *557 1984, 1985, 1986, and 1987, petitioners claimed net losses from South Sea in the amounts of $ 25,900, $ 27,377, $ 27,795, and $ 20,976, respectively. During those years, South Sea's gross receipts, expenses, and costs of goods sold were as follows: Costs of Goods
Cash
Portion of
Expenditures
Sold (COGS) Respondent
COGS Evidenced
Gross Allowed by
Allowed by Cancelled
Year
Receipts
Expenses [3]
Respondent
as COGS [4] *558 Checks [5] 1985
$ 29,767
$ 16,017.17
$ 26,004 0
$ 19,289.18
1986
32,086
15,510.73
26,964
8,243
19,650.37
1987
$ 38,974
$ 15,707.91
$ 28,798
$ 16,148
$ 18,746.41
Petitioners untimely filed their 1985 Federal income tax return. OPINION Section 183 generally limits the amount of expenses that may be deducted with respect to an activity "not engaged in for profit". Sec. 183(a). For this purpose, an activity is "not engaged in for profit" if deductions are not allowable for the taxable year under section 162 or section 212(1) or (2). Sec. 183(c). The test for determining whether a taxpayer conducted an activity for profit is whether the taxpayer entered into, or continued, the activity "with the actual and honest objective of making a profit". Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). The *559 taxpayer's expectation of profit need not be reasonable; however, he or she must have a good-faith objective of making a profit. Allen v. Commissioner, 72 T.C. 28, 33 (1979); Holbrook v. Commissioner, T.C. Memo. 1993-383; sec. 1.183-2(a), Income Tax Regs.
Whether petitioners engaged in their pet store operation with the requisite profit objective is determined from the facts and circumstances of the case. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); Holbrook v. Commissioner, supra; sec. 1.183-2(a) and (b), Income Tax Regs. More weight is given to objective facts than to petitioners' statements of their intent. Holbrook v. Commissioner, supra; sec. 1.183-2(a), Income Tax Regs. Petitioners bear the burden of proof. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The following factors, which are nonexclusive, aid in determining if an activity is engaged in for profit: (1) The manner in which *560 the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. Holbrook v. Commissioner, supra; sec. 1.183-2(b), Income Tax Regs. No single factor is dispositive, Golanty v. Commissioner, supra at 426; sec. 1.183-2(b), Income Tax Regs., and a profit objective does not hinge on the number of factors satisfied, sec. 1.183-2(b), Income Tax Regs.
With respect to the manner in which petitioners carried on the activity, one indicium of an activity engaged in for profit is a taxpayer's businesslike conduct of an activity. Sec. 1.183-2(b)(1), Income Tax Regs. This includes the keeping of complete and accurate books and records. *561 Id. Petitioners' records were haphazard and incomplete. They did not keep any inventory records at all, although the pet store is a retail sales operation. Although Ranciato testified that he was the bookkeeper for South Seas, he did not know in which years if any he had earned a profit and had not computed his gross profit percentage. Petitioners also did not make any significant attempts to advertise South Seas in the years in issue, another indication that Ranciato did not conduct the activity in a businesslike manner. In preparing for an activity, a taxpayer need not make a formal market study, but should undertake a basic investigation of the factors that would affect profit. Underwood v. Commissioner, T.C. Memo. 1989-625; Burger v. Commissioner, T.C. Memo. 1985-523, affd. 809 F.2d 355 (7th Cir. 1987). Petitioners failed to do so. Similarly, petitioners did not present evidence that they prepared to enter the pet store business by study of its practices or by consultation with experts, which might indicate a profit motive had they followed such advice. Sec. 1.183-2(b)(2), Income *562 Tax Regs.
Another factor is the time and effort expended by petitioners in carrying on the activity. Sec. 1.183-2(b)(3), Income Tax Regs. Ranciato spent some evenings and weekends at the store, between working as an electrician and a real estate agent, jobs that required much time and travel; he did not spend significant amounts of time at the store. Petitioners presented no evidence that Lucille Ranciato, Ranciato's wife, spent any significant amount of time at the store, either. Another factor to consider is petitioners' expectation that assets used in the activity may appreciate in value. Sec. 1.183-2(b)(4), Income Tax Regs. Petitioners did not show that they expected the store's assets to increase in value; instead the value of its inventory decreased over time as animals became diseased or died. With respect to petitioners' history of losses from the activity, we note that losses due to fortuitous circumstances, such as depressed market conditions or disease, are not an indication that the activity is not engaged in for profit. Sec. 1.183-2(b)(6), Income Tax Regs. However, losses continuing beyond the period customarily necessary to make the operation profitable, if *563 not explainable, may indicate that the activity is not engaged in for profit. Sec. 1.183-2(b)(6), Income Tax Regs. This is not a case where the series of losses is at the beginning or start-up stage of the activity, where we would be more sympathetic to petitioners. See sec. 1.183-2(b)(6), Income Tax Regs. In addition, petitioners did not adopt a different method of running South Seas to increase its profitability, which would be another indication of their profit motive, sec. 1.183-2(b)(1), Income Tax Regs., and which might have limited the numbers of diseased or dead animals in the future. With respect to elements of personal pleasure or recreation, the regulations state that "The presence of personal motives in carrying on an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved." Sec. 1.183-2(b)(9), Income Tax Regs. However, the mere fact that a taxpayer derives personal pleasure from engaging in an activity does not, in and of itself, mean that the activity is not engaged in for profit if other factors show otherwise. Id. Ranciato did not engage in the operation of South Sea for recreation, *564 although he may have had personal purposes for so doing. A review of the entire record of this case in the context of these factors persuades us that petitioners did not engage in the pet store activity with the requisite profit motive during the years in issue. Petitioners did not carry on the activity in a businesslike manner; they presented no evidence of having expertise in the pet business or having consulted expert advisers; they did not adopt new techniques in an effort to increase South Sea's profitability; they devoted only a small amount of time to the activity; they had no reasonable expectation that assets used in the activity would appreciate in value; and they have a long history of losses from the activity. In addition, we note that petitioners did not call Ranciato's mother to testify although she operated the store for all the years in issue and paid most of the invoices. We can only assume that petitioners failed to call her because her testimony would have been unfavorable to them. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946) affd. 162 F.2d 513 (10th Cir. 1947). Respondent *565 also disallowed certain of petitioners' costs of goods sold, for lack of substantiation. A taxpayer must substantiate cost of goods sold in order to offset it against his gross receipts. Wright v. Commissioner, T.C. Memo. 1993-27. Respondent conceded certain amounts of costs of goods sold for each year, which included both amounts paid by cash and by check. Petitioner adequately substantiated certain cash expenditures. We also find that petitioners substantiated all amounts for costs of goods sold paid by check, some of which respondent did not allow petitioners. Accordingly, we hold that, in determining their gross income from South Sea, petitioners may offset their gross receipts with costs of goods sold in the amounts of $ 26,004 for 1985, $ 27,893.37 for 1986, and $ 34,894.41 for 1987, respectively. Based on the Court's determination that South Sea was not entered into for profit, petitioners are limited in their deduction of South Sea expenses to the gross income earned by South Sea in each year so determined. Sec. 183(b). In determining gross income for each year, costs of goods sold is offset against gross receipts. Sec. 1.183-1(e), *566 Income Tax Regs.
Respondent determined that petitioners are liable for an addition to tax under section 6651(a)(1) for filing their 1985 Federal income tax return late. Petitioners have produced no evidence that their failure to file their return on time was due to reasonable cause. Accordingly, we uphold respondent's determination on this issue. See Neubecker v. Commissioner, 65 T.C. 577, 585 (1975); Barr v. Commissioner, T.C. Memo. 1989-69. Respondent also determined that petitioners are liable under section 6621(c) for increased interest on a portion of their tax deficiencies for the taxable years 1985, 1986, and 1987. Section 6621(c) provides that increased interest is due if a "substantial underpayment" is attributable to a "tax motivated transaction". A "substantial underpayment" is an underpayment of more than $ 1,000. Deductions disallowed under section 183 because a transaction was not engaged in for profit are attributable to a tax-motivated transaction. Sec. 301.6621-2T Q&A 4, Temp. Proced. & Admin. Regs., 49 Fed. Reg. 50392 (Dec. 28, 1984). Cost of goods sold is not a deduction *567 but an offset to gross receipts in determining gross income. Sec. 1.183-1(e), Income Tax Regs. As such, an underpayment due to cost of goods sold is not attributable to a tax-motivated transaction. However, respondent disallowed certain of petitioners' deductions with respect to South Sea based on her determination that South Sea was not entered into for profit. The Court has determined that petitioners' deductions are limited to their gross income from South Sea. Sec. 183(b). Accordingly, for each year in which the Rule 155 computation indicates an underpayment of more than $ 1,000 attributable to disallowed deductions from South Sea, we hold that petitioners will be liable for an increased rate of interest on the underpayment under section 6621(c). Respondent also asserted that petitioners' underpayment of income taxes in each year was due to negligence or intentional disregard of rules or regulations, and determined an addition to tax for negligence under section 6653(a)(1) and (2) for petitioners' 1985 taxable year and under section 6653(a)(1)(A) and (B) for their 1986 and 1987 taxable years. For 1985, section 6653(a)(1) imposes an addition to tax equal to 5 percent of *568 the underpayment if any part of the underpayment is attributable to negligence, and section 6653(a)(2) imposes an addition to tax equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence. For 1986 and 1987, section 6653(a)(1)(A) imposes an addition to tax equal to 5 percent of the underpayment if any part of the underpayment is attributable to negligence, and section 6653(a)(1)(B) imposes an addition to tax equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence. Negligence includes a lack of due care or a failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners bear the burden of proving that respondent's determination of negligence is erroneous. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). We find that petitioners presented insufficient evidence on this issue and sustain respondent's determination of additions to tax for negligence for all the years in issue. We note that, petitioner's unexcused late *569 filing of their 1985 Federal income tax return amounts to negligence for that year. Emmons v. Commissioner, 92 T.C. 342, 349 (1989). Respondent also determined that petitioners are liable for additions to tax for substantial understatement of tax under section 6661 for their 1985 and 1987 taxable years. The amount of the section 6661 addition to tax for additions assessed after October 21, 1986, equals 25 percent of the amount attributable to the substantial understatement. Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002, 100 Stat. 1951; Pallottini v. Commissioner, 90 T.C. 498, 500-503 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). An understatement is reduced to the extent it is: (1) Based on substantial authority, or (2) adequately disclosed in the return or in a statement attached to the return. Sec. 6661(b)(2). Respondent's determination of an addition to tax for substantial understatements under section 6661 is presumed to be correct, and petitioners bear the burden of proving *570 otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Sandvall v. Commissioner, 898 F.2d 455, 459 (5th Cir. 1990), affg. T.C. Memo. 1989-56. As petitioners presented no evidence on this issue, we sustain respondent's determination for each year in which the Rule 155 computation reflects a substantial understatement within the meaning of section 6661. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. This amount is 50 percent of the interest on the deficiency.↩
1. The parties stipulated that: (1) Petitioners may deduct losses from certain Vermont rental property in the amounts of $ 10,443, $ 9,025, and $ 8,033 for their 1985, 1986, and 1987 taxable years, respectively; (2) petitioners do not have additional income of $ 4,800 for their 1987 taxable year; (3) petitioners have additional income from Rance Real Estate of $ 647 and $ 20,272.98 for their 1985 and 1987 taxable years, respectively, and a net loss of $ 1,102.02 for their 1986 taxable year; and (4) petitioners are not entitled to costs of goods sold in amounts greater than $ 41,113.44 for 1985; $ 42,158 for 1986; and $ 38,006.94 for 1987, but are entitled to costs of goods sold of at least $ 26,004 for 1985; $ 26,964 for 1986; and $ 28,798 for 1987. Petitioners' counsel stated at trial that all issues other than the issue of whether petitioners' pet store was engaged in for profit and the substantiation of costs of goods sold were stipulated between the parties. We assume that the additions to tax determined by respondent are still in issue, as both parties briefed them. However, with respect to any other issues that were not settled by the parties, because the burden of proof is on petitioners and they presented no evidence on these issues, we rule in favor of respondent. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115↩ (1933).
2. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. In her notice of deficiency, respondent disallowed all of petitioners' expense deductions with respect to South Sea, alleging in part that South Sea was not entered into for profit. Petitioners and respondent stipulated that the expenses listed were incurred. These amounts are less than petitioners reported.↩
4. These amounts were computed by subtracting from the costs of goods sold allowed by respondent the cancelled checks she allowed. The cancelled checks respondent allowed differs from the amount of cancelled checks respondent stipulated at trial that petitioners presented.↩
5. Respondent allowed some but not all of the amounts paid by check because her calculations were based on invoices supplied by petitioners. In 1985, she allowed amounts reflected in invoices and cancelled checks, but no cash payments. In 1986 and 1987, she allowed the amounts reflected in invoices and cash payments but not in cancelled checks.↩